

# THE ATTORNEY GENERAL

## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN, TEXAS 78711
September 8, 1966

Major General Thomas S. Bishop
The Adjutant General of Texas
Camp Mabry
Austin, Texas

Opinion No. C-755

Re: Whether the Governor
of Texas can issue
regulations, under
the authority of
Art. 5780, Sec. 2;
Art. 5765, Sec. 4;
and under his con-
stitutional authority
as Commander in Chief,
giving the Adjutant
General's Department
authority to enter in-
to an agreement with
the National Guard
Bureau and the United
States Air Force for
the operation of
Ellington Air Force
Base as the host
organization, financed
out of 100% Federal
funds, without going
through or being in-
volved with the pro-
cedures of Art. 5767,
V.C.S.

Dear Sir:

Your opinion request in regard to the above matter,
reads, in part, as follows:

"...

"The request for this Attorney General's
opinion is brought about by a change of circum-
stances at Ellington Air Force Base. Recently,
the Secretary of Defense and, under his direction,
the National Guard Bureau, advised the State of
Texas that there would be an inactivation of cer-
tain United States Air Force Reserve Units at
Ellington Air Force Base. These are the units
that had host jurisdiction and responsibility
in the past. With the inactivation of these
units, The National Guard Bureau has requested
that the base jurisdiction or host responsibility

be transferred from the Continental Air Command
to the Texas Air National Guard.  The acceptance
of host responsibility at Ellington would be pur-
suant to a permit or license to control the pro-
perty.  The Texas Air National Guard would not
purchase or acquire the realty.  The proposal
would still leave several small units on the base,
and these units would be tenants of the Texas
Air National Guard and/or the Adjutant General's
Department.  These units include the National
Aeronautics and Space Administration, a United
States Coast Guard Unit, an OSI Detachment, and
an Air Force Advisor's Detachment and other small
units.  If the State of Texas assumes this responsi-
bility, the National Guard Bureau has indicated
its willingness to finance this operation out of
100% Federal funds.  No State funds would be
obligated by the assumption of this responsi-
bility.  However, since NASA, the Coast Guard,
and other units are involved, it is felt that
the problems of operating this base under the
jurisdiction of the Adjutant General for Air
would be impossible if all Host-Tenant Agree-
ments, licensing, Service Contracts, repairs,
and construction had to go through the Texas
National Guard Armory Board and the bidding
process required by State Law with regard to
such projects.

"   . . .

"Your opinion is respectfully requested as
to whether the Governor of Texas can issue
regulations . . . giving the Adjutant General's
Department authority to enter into an agreement
with the National Guard Bureau and the United
States Air Force for the operation of Ellington
Air Force Base as the host organization, financed
out of 100% Federal funds, without going through
or being involved with the procedures of Article
5767, Vernon's Civil Statutes of Texas.  . . .

"   . . ."

Article 5767, Vernon's Civil Statutes, creating the
Texas National Guard Armory Board, a body politic and corporate,
was enacted for purposes of assisting the Adjutant General and
the Governor in acquiring, constructing, renting, controlling,
maintaining, and operating all Texas National Guard Armories.

In Opinion No. 0-5752 (1944), this office construed the above Act, which had been amended in 1937 and codified as Article 5890b, Vernon's Civil Statutes, in order to determine the legal status and purpose of the Board.  It was held that the Board was created ". . . to act as the alter ego of the State for particular purposes."  We said that ". . . the Legislature intended the Act to have a dual purpose.  The first purpose was to create an agency, in the absence of an existing agency, with authority to cooperate with the United States Government, by securing available federal funds to construct National Guard Armories in the State.  . . .  The second purpose of the Act in effect made the Armory Board the managing agency of the State in respect to all Texas National Guard property.  . . .  The two purposes, as we have expressed them, are not in conflict."

For more exhaustive historical summation, see Attorney General Opinions 0-5695 (1943), 0-5752 (1944) and 0-7398 (1946).

By virtue of his office, the Governor of the State of Texas, as Commander-in-Chief, is vested with both inherent and express Constitutional and statutory powers in the governing, organizing, and training of the State Militia.  Article IV, Section 7, Constitution of Texas; Articles 5765, 5768, 5780, Vernon's Civil Statutes; 57 C.J.S. 1086-1087, Militia, Section 10; see Article XVI, Section 46, Constitution of Texas.

Section 2 of Article 5780, Vernon's Civil Statutes, reads as follows:

"Sec. 2.  The Governor shall prescribe such regulations as he may see fit for the organization of the Texas National Guard; and he shall, from time to time, as he may deem for the best interests of the service, change such regulations, which shall be in accordance with this Chapter, and conform as near as practicable to the organization of the Armed Forces of the United States.  He may, at any time for cause deemed good and sufficient by him, muster out of the service or reorganize any portion of the Texas National Guard or the reserve militia, and he shall have full control and authority over all matters touching the military forces of this state, its organization, equipment and discipline."  (Emphasis added.)

By Section 4 of the above Article, the Governor is provided a staff consisting of the Adjutant General, assistants,

and various others designated therein.

In view of the broad powers vested both impliedly and expressly in the Governor of Texas by the Constitution and statutes, and after consideration of the statutory provisions pertaining to the Adjutant General of Texas and being of the opinion that Article 5767, Vernon's Civil Statutes, was not created, designed, nor intended to provide a procedure for regulating or operating a military air base owned, supported and maintained 100% by the Federal Government such as that contemplated at Ellington Air Force Base, it is our opinion that Article 5767, Vernon's Civil Statutes, does not apply to agreements made under the above stated factual situation. Further, it is our opinion that the Governor of Texas is authorized to make the agreement, or direct that it be done, and the Adjutant General can carry out the agreement under the consent and direction of the Governor requiring such duties.

## S U M M A R Y

The Governor of Texas can issue regulations, under the authority of Art. 5780, Sec. 2; Art. 5765, Sec. 4; and under his constitutional authority as Commander in Chief, giving the Adjutant General's Department authority to enter into an agreement with the National Guard Bureau and the United States Air Force Base as the host organization, financed out of 100% Federal funds, without going through or being involved with the procedures of Art. 5767, V.C.S.

Yours very truly,

WAGGONER CARR
Attorney General

By: *Alan Minter*
Alan H. Minter
Assistant Attorney General

By: *Roger Tyler*
Roger Tyler
Assistant Attorney General

AM:ra:dh

Major General Thomas S. Bishop, page 5 (C-755)


APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Kerns Taylor
J. C. Davis
Gordon Houser
Robert Flowers

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright